Good morning. Good morning, Counsel. May it please the Court, my name is Sherry Zwieka and I'm here on behalf of Appellant and Defendant Anheuser-Busch Incorporated. I would like to reserve about four minutes of my time for rebuttal. The issues before this Court today are actually very narrow and the sole focus should be on whether the District Court had jurisdiction and scope, proper scope of authority to do what it did under the FAA. And clearly we submit that the answer is no. Now, my opponents, appellee Fred Powell and as amicus the EEOC contend that this Court has the ability to review a host of other issues that are not properly before the Court under the FAA and also under the Court's appendant appellate jurisdiction. Now, first, under the FAA, the District Court's ability to make rulings once it's determined that there's an arbitrable issue, the District Court's ability to make further rulings after that is quite limited by statute. And there is dicta in Primocate that suggests this statutory limitation is, in fact, jurisdictional. In fact, the agreement itself is what takes the scope of the Court's jurisdiction and transfers that to the arbitration process. What's the employee's remedy if the union doesn't take up his grievance? In other words, I'm an employee, as Mr. Powell was here, and so I go to my union and I say I've got a grievance and the union has discretion to say we're going to proceed with this or we aren't. And here they said we aren't going to proceed with your grievance. Is that correct? That is correct. That's what happened here. What's his remedy then at that point? Well, the Supreme Court addressed that in 14 Penn Plaza v. Pyatt, and there's language in there that says that the employee's remedy in this situation is under the NRLA and against his union. For breach of duty of fair representation. Yes. That's his only remedy. Well, I don't know. I would submit that here the record's not fully developed, and that's because of the unusual procedural posture that we find ourselves in. Isn't there a problem with the fact that you were – the Court ordered you to arbitration and you could never even agree on an arbitrator? And that you were – that your client was kind of foot-dragging on this and claiming – I mean, they could simultaneously file something against the union for not representing them appropriately and still be entitled to arbitrate their claim with you for the grievance that they have against you, the employer. And that could go on simultaneously. That's not a reason for not participating in the Court-ordered arbitration. I agree. And the record here does not suggest – there were no factual findings that Anheuser-Busch here did any foot-dragging or did anything other than try to move this process along. The CBA itself provides a mechanism for appointing an arbitrator. And, you know, neither party invokes that procedure. The FAA itself has a mechanism for having the Court appoint an arbitrator where the parties can't decide on one, and neither party invokes that mechanism. Instead, they were trying to work it out themselves, and before that was done, Powell filed a motion for reconsideration. Well, there is a factual finding of an impasse, a complete breakdown in the arbitration process, that the parties couldn't agree on procedures. Basically, what was at issue is – and tell me if I'm right or wrong – who would pay if – who would pay the losing sides? I mean, would the losing side have to pay the costs? I don't know that that's the correct assessment of what the factual finding is. The Court did find there was an impasse, and beyond that, the district court didn't make any other factual findings. The district court did not attribute fault to one party or the other. There was no factual hearing on that. There was no fact finding at all. Now, what – to address your point about who pays, that's something that, you know, in terms of the arbitrator's fees up front, that Anheuser-Busch offered to pay $10,000 of the fees up front. That certainly was enough to get an arbitrator appointed and to resolve some of these procedural issues, if not resolve the whole case. There's nothing in the record for us to even determine whether that was enough for Powell to vindicate his claims fully. It's just not in the record. Did you cite any case – is there any case standing for the proposition that before an arbitrator is selected, the district court cannot consider a motion for reconsideration of its order sending the case to arbitration? The district court can do that. We're not contending that the district court can't reconsider its prior order. But there needs to be new law or new facts, and there are none here. Well, the new facts are you reach an impasse. This never even went to arbitration. You couldn't even agree on an arbitrator. Right. And the proper procedure to remedy that is to either go to the CBA, which has a mechanism for appointing an arbitrator. But you guys didn't do that. I mean, this really was a complete impasse. You couldn't even agree to do that. Well, I don't know that we didn't agree to. We could have done it and we didn't, neither did Powell. I don't know that we decided to do it. So the judge took control to get this thing moving. But you say there are no new facts. Well, new facts are these guys can't agree on an arbitrator. You and I go to arbitration, and I say, I want Barack Obama to be my arbitrator. Well, come on. He's too busy. He's not going to be your arbitrator. No, I'm sorry. That's it. I don't want to hear any more. That's going to be my arbitrator. I can cause a breakdown in it any time, and the court has to be able to, the district court has to be able to come in and put the thing back on track. I mean, because it didn't even proceed to arbitration. It didn't get through the appointment of an arbitrator. Right, and that's the point. The district court's power is very limited in how it can get this thing back on track. It could either, under the Morris case, which the district court references in its order, dismiss the case altogether, which clearly it didn't do, or it could have treated the motion as a motion to appoint an arbitrator under the FAA, which it didn't do. But it can't just simply ignore the agreement and put it back on its docket, and that's what it did. That is wholly outside of the scope of its jurisdiction. That's why I'm asking you for a case on that. I'm sorry? That's what I was asking for, a case on that. Well, we cited in the whole beginning portion of our reply brief of the body of law that says that the scope of jurisdiction under the FAA is limited. I don't know that there is a case that specifically addresses our situation here. I couldn't find one. You know, reading these e-mails, I guess it's one lesson to be gained is don't put everything that comes to the foremost of your mind in an e-mail. And the next thing is there really, it seems to be a little bit of games playing on both sides, okay? And I think given that both sides were engaged in this, the finding by the district court that there was an impasse, it seems quite reasonable. Well, then the question is, even if the court's finding was reasonable, what's the proper remedy for that? And the proper remedy is not to restore the case to the docket. The court, in order to do that, has to find that the person or the party insisting on arbitration is the one at fault. And the court didn't do that. And I don't think that's reasonable under the facts presented here to assume that. What does the collective bargaining agreement say if the union fails to take up the grievance? Do you understand my question? In other words, I'm an employee. I file a grievance. And the union says, no, we aren't going to prosecute your grievance. What's my remedy then? What does the collective bargaining agreement say? I don't know that the CBA itself addresses that. It doesn't, does it? No, it doesn't. But the law says that the remedy that the employee has is to... One remedy is under the National Labor Relations Act for breach of the duty of fair representation. Correct. But, I mean, that can be a heavy burden for the employee to bear. And it may not be a breach of the duty of fair representation. They just don't like my agreements. They don't think it has merit, perhaps. So I'm just without a remedy? I mean, and here the parties seem to have chosen the remedy of arbitration. Everybody proceeds to arbitration as though there's an agreement. But there's really no agreement to arbitrate. I think here there is an agreement to arbitrate. I mean, that's... And where is that agreement? That's the CBA itself. Which says the union will do it. Because as an employee, in other words, we employees agree we're going to have a collective bargaining agent. It's the union. The union says, and typically the union goes through the arbitration. But here there's no, the union says, no, we aren't taking up this agreement. Sure, I understand your question now. The CBA does provide that all disputes between an employee and the employer and the union and the employer are covered by the agreement. So in terms of whether an employee's dispute against the employer is covered, from an individual standpoint, I would say that it is. And in this case, the parties did proceed down that path. Where things broke down is when Powell insisted that something wholly irrelevant, the application of the California's Armendariz case, should apply. And when Anheuser-Busch did not submit to Powell's demands 100% in full, that's where we found ourselves with the motion for reconsideration. I don't know if that answers your question. I didn't mean to interrupt you. You go ahead and finish what you were about to say. Oh, I'm sorry. I was finished. All right. Now, I want you to correct what may be a total misimpression on my part. But I have in my mind that in order for an employee to sue an employer in a situation covered by a collective bargaining agreement, the union itself is a necessary party to that action. And the employee has to not only join the employer, but join the union and accuse the union of a lack of fair representation. Now, in some context, that's required, is it not? I would agree in some context. I don't know that that's necessarily required in all situations, because here the employee was permitted to pursue arbitration without his union. There was nothing preventing him from doing that except himself. Well, except if there's some rule of law that says that the employee cannot sue the employer without joining the union and accusing the union of fair representation. That would be a barrier if my sense of what I thought the law is, is right. That was never raised in this case. You know, it wasn't. I don't know that in this situation. And we don't need to deal with it at all. I don't think that it was. I think I'm answering the question. If I say that, I don't think in this case it was necessary for either party to insist that the union was a necessary party to the action. Then if the posture of this case is such that all that was filed was a motion to reconsider the court's prior order compelling arbitration. Am I right? That's how the court and the court never said at any point that it made a mistake in ordering arbitration. It simply said events since the order caused the court, the district court, to set it aside. It never said it was wrong in doing what it did in the first instance. Now. Does our focus. Does our focus have to be on the issue of whether or not the district court was correct in concluding that the order as entered. Was wrong. That is, the district court was correct in saying that it should be set aside. Or can we look to these other events that occurred after the fact and say, well, that's a good enough reason for setting it aside. That's normally not what you see in a motion to reconsider. You don't. Anyway, I'll let you respond to that. I agree with you. I think in this case, it's quite clear that the district court did not find itself to have committed an error in issuing its initial order compelling arbitration. The court never reversed itself on that point. And that is exactly, precisely why the court's jurisdiction was limited in what it could do on a motion and what this court can do on an appeal from that motion. That's exactly the reason why jurisdiction is limited. I mean, the issues that some of the issues that we're discussing here, whether, you know, what's raised in my opponent's briefs. Those are all properly raised at the conclusion of this process after arbitration has been had. All right. One more question. Now, if we in reviewing the district court's initial order for arbitration conclude by reason of interpreting the collective bargaining agreement or for other reasons that that was in fact wrong. Do you think that issue is in front of us? I don't. Because it wasn't properly before the district court. It can't be properly before this court under the FAA. And then under the principles of pen and appellate jurisdiction, Powell has the burden to show that those two rulings are inextricably intertwined. And we submit he can't do that here. It's perfectly possible to review solely this order without reference to the other one. Thank you. Your time's up. Thank you. Good morning, Your Honors. I am Kathleen Fair Barnard, here for Mr. Powell. And I'd like to reserve five minutes for Ms. Sloan from the EOC. I'd like to begin by answering some of the judges' questions that were posed to my opposing counsel. And, Judge Levy, let me start with some of your questions. First of all, on the jurisdictional issue, because I think that's an underlie of everything that we need to clarify. None of the cases the defendant cites says that the FAA has jurisdiction of the district court. The district court has, in this case, diversity jurisdiction. There was also a removal based on 301 preemption. Now, while Plaintiff Powell and I agree that that was not grounds for removal, 301, as we say in our brief, does provide federal court jurisdiction for interpreting collective bargaining agreements. Those are the jurisdictional basis for this case to have been in district court. What the FAA does, if you read it and you read the cases, actually, if you read Morris cited by the district court and Anaconda cited by Morris, you will see that Anaconda says the FAA does not house the district court's jurisdiction over the underlying claims, those claims brought by Mr. Powell. What it does do is, I'm sorry, can you handle that? Should I continue? Did I? We have an echo. What it does do, Your Honors, is that it provides an overlay of jurisdiction, or actually a path through jurisdiction to consider motions to compel arbitration agreements that cover those claims that are subject to the district court's jurisdiction. And what Anaconda says, cited by Morris and cited recently by this Court in Chalk v. T-Mobile, which is at 560 Fed Third, 1087 at page 1092, note 3, is that it doesn't in the underlying claims. So you have to think of the FAA as limited in district court's options, not ousting jurisdiction. And from there, let's go to another question about the district court not blaming anyone and there's just a finding of impasse. Yes, the FAA says you can stay if one party is in default, and Houser Bush makes a big deal about them, but there's no finding of default on their part. And I heard you, Judge Wardlaw, say emails are dangerous things and maybe there was some game playing on both sides here. But Mr. Powell was attempting to ensure that there would be a forum that would be sufficient to ensure that he didn't waive his substantive right, and we've argued that in the brief and I don't want to go there. That's also an obligation of the district court to protect that from happening under Gilmer and Wright and Payette all say that district courts have an obligation to ensure that arbitration agreements, which may waive forum rights and can be enforced, but prospective substantive rights may not be enforced by the federal courts. Suppose the, I mean, this case seems to have gotten terribly off track and I think I'm beginning to see how or why. CBA provides for arbitration between the union and the employer, right, and provides certain procedures for that type of an arbitration. Here, we got, you know, Wrench got thrown into the works because the union turned down, you know, refused to take on the grievance. So I don't understand where in the CBA your client is, what in the CBA would require your client to arbitrate at all when he has just a regular claim of disability discrimination. Well, Your Honor, let me address that and it's kind of a segue from what I was saying. We argued vociferously in our brief and I don't want to repeat everything there, but this contract doesn't call for arbitration of disability claims. It calls for the union's ability to arbitrate an accommodation extended by the arbitrator to a disability that might, in the union's view, violate the contract. That's all it does. And there's no provision binding individuals when the union doesn't go. So just as you may have had an epiphany reading through all of this, so did the district court, and I have to disagree with Counsel for Anheuser-Busch. Certainly, the district court could have done a number of things. It was a terse minute order, unfortunately, but the court said the CBA doesn't provide procedures and Pyatt doesn't support Anheuser-Busch's position in this matter. Those could mean that the court changed its mind. The issue about pendant jurisdiction, I just want to go back to that. These orders, the original order and the second order, are... The second order is the one on review and it's properly on review. The first one is a precursor to that order. It was reversed and the district court could have made a change of mind and even if it didn't, this court could, as a matter of law and due noble review, make that determination now. Secondly, there doesn't need to be a fact-finding about who was at impasse because the idea is you have to support no enforcement of substantive waivers. The least controversial thing this court could do is reverse, as a matter of law, that the CBA doesn't explicitly waive Mr. Powell's access to courts for his claims. The second most less controversial thing you could do is say, well, here there was the district court reconsidered its decision and brought it back because of the impasse, which, as you have said, the court has power to do in managing its own docket while it has jurisdiction. And certainly the court did not abuse its discretion in reconsidering the situation after the factual developments that you mentioned, Judge Mahan. The third thing you could do in this case, which would be sort of a first impression issue, because the case of Cravar was on appeal and then the parties settled, but in Cravar the court said, well, the union declined to arbitrate. There's no agreement here that binds an individual to arbitrate under this contract. You have to enforce the one that's in the contract. And you could make that determination on this record as well, and I would urge you to do that if you need to do that. But that would be a first impression issue. And actually there's four things you could do, and the last one would be even if you thought Mr. Powell was bound in some way to arbitrate this case, the terms under which the employer was willing to arbitrate would have amounted to a substantive waiver. On the issue left open in Payette, as you know, the court there faced a factual issue about whether an individual was required to arbitrate under that contract or what kind of procedure that would have. I want to move on, too, to the substantive waiver issue, in case the court reaches that, and I have one minute, so I'll do that quickly. The JAMS, AAA, all of those associations have arbitration rules that are addressed due process under certain circumstances. Some of them have to do with mandatory arbitration where it's unilaterally imposed by the employer. Other rules have to do with whether it was a mutually negotiated arbitration agreement of relative similar power, and you might argue that when a union negotiates that, that's the set of rules to apply. But there are due process rules applying specifically to employment law cases so that you can make sure that the statutory rights will be vindicated, that the employee will not be forced to pay as they would not in court for the services of the arbitrator, that there would be no loser pay provision that would be, in contrary to federal and California law, as far as you lose a discrimination case, you don't pay the defendant's fees or the judge or the arbitrator for doing that. And finally, even if you took all those rules away, the National Academy of Arbitrators has their due process protocols. None of these conditions that the Ann Azar Bush wanted to impose on an arbitration scheme by Mr. Powell, too, would meet any of those due process requirements. And without that, you'd have to say, as I believe the court did, that there would be, a waiver of Mr. Powell's substantive rights if he were forced to arbitrate on the terms that were sought by Ann Azar Bush to impose. And with that, I'll leave time for Ms. Powell, unless the court has any questions. Go ahead. Good morning, Your Honors. Barbara Sloan from the EEOC. Our main concern with this case is to ensure that union members like Mr. Powell have an ability to effectively vindicate their claims, whether it's in arbitration or somewhere else. And we think that the district court was right in concluding that Mr. Powell did not have an opportunity in this case. And I think the court's ruling on that was based on its conclusion that there were defects in the collective bargaining agreement, which just prevented him from having a fair forum in arbitration. But did the collective bargaining agreement require him to, as an individual, to arbitrate? No, Your Honor, it did not. That's the key to this case. The only way that you can get there is if you do what the defendant wants to do, which is unilaterally modify provisions so that it works, because there's no way to initiate arbitration. The cost provision is unenforceable. There's no mechanism. The mechanism in the agreement for choosing an arbitrator doesn't work for individuals. It only works for unions and management. That's what the FMCS does. And, in fact, I think there's an email somewhere from ABI saying, oh, yeah, we're not going to use that one. We have to agree. And they talk about having the arbitrator appointed by the court, but I think the court probably would have just said, tell us who, you know, give us some names. The parties would have nominated the same people they nominated, and they were all jams arbitrators, and they all charged more than the defendant was willing to pay. So, yeah, there's nothing in this agreement. At best, you could say there's a plausible reading, maybe, that it waives Mr. Powell's right to litigate. But it has to be the only interpretation, because it has to be a clear and unmistakable waiver of a judicial forum. It has to be the sole and exclusive way that he can resolve his claims. And there's none of that. In fact, the defendant characterizes what has to be clear and unmistakable, is that there has to be clear and unmistakable coverage of statutory claims. But that's not the issue. The issue is whether it's a clear and unmistakable waiver of a judicial forum. And there's nothing in this. In fact, there's a provision that says the union and the employer have to resort to arbitration, but it explicitly does not include the employee. And that's a huge concern to us, Your Honor, because if this agreement is enough to constitute a clear and unmistakable waiver, just about anything would be. And this is going to be recurring and recurring and recurring. There just aren't – this agreement – I mean, the union says we didn't agree to this. The employer points to nothing. There's no bargaining history here, nothing to suggest that this was ever considered. So we think the court was – the district court was wrong in finding a waiver, and we think that perhaps the court came around to thinking that there wasn't a waiver because the agreement was so defective with respect to individual arbitrations. If the court has no further questions, I'd be happy to sit down. Well, yeah, I just – I want to be sure, and I think I do, understand your argument. You're arguing that the court – the district court was wrong in the first instance in ordering arbitration. Right. You're not defending what the court did or the reasons why the court set it aside. No, Your Honor, I think – I'm sorry. Because the court found no fault with either party, just said you're not getting there from here, and so I'm withdrawing the order, but it never said that it was wrong. So your whole argument is that the court was wrong in the first instance, and your position is we can reach that issue on this record. We believe that the court was – that the court can affirm on both grounds, Your Honor. Okay. Because it's a single order. The only order here is the order compelling – excuse me, the order denying arbitration. That's the order that's under review here. That's what the defendant is appealing. It's a single order. There are two grounds for it. We think the court was right because the plaintiff could not effectively vindicate his rights in this forum in light of the defects in the collective bargaining agreement. All right. And that points to the defect or the erroneousness, in your view, of the court's original order directing arbitration. There are defects in the agreement that, for example, the cost provision, the lack of any mechanism for initiating arbitration. I mean, the defendant says, well, there's nothing that says you can't, but it has to be clear and unmistakable. Yes. I'm confident now that I understand your argument. Okay. Good. All right. Thank you, Your Honor. Thank you, counsel. Powell v. Anheuser-Busch is submitted in the last case. And Ray Eisen is also submitted on the briefs, and so this session of the court will be adjourned for today. I did have one question. You used it all. You went over your time, actually. Thank you. Thank you. All rise. The court for the session is adjourned.
judges: Mahan, Leavy, Wardlaw